**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DARIUS GILKEY,

             Petitioner,

                             CASE NO. 2:17-CV-13270
v.                              HONORABLE ARTHUR J. TARNOW
                              UNITED STATES DISTRICT JUDGE

DEWAYNE BURTON,

             Respondent.

_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS AND GRANTING A CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

     Darius Gilkey, ("petitioner"), confined at the Handlon Correctional Facility in Ionia, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction for first-degree murder, M.C.L.A. 750.316; [1] and first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(e).  For the reasons that follow, the petition for writ of habeas corpus is DENIED WITH PREJUDICE.

### I.  Background

     Petitioner was convicted following a bench trial in the Wayne County Circuit Court. [2]  This Court recites verbatim the relevant facts relied upon by the

_____

     [1]  Petitioner was convicted of first-degree premeditated murder and first-degree felony murder.  The two convictions were merged into one sentence.

     [2]  Petitioner was convicted by a jury in a separate case of first-degree premeditated murder and first-degree criminal sexual conduct.  Petitioner filed a

Michigan Court of Appeals, which are presumed correct on habeas review

pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith,* 581 F.3d 410, 413 (6th

Cir. 2009):

> Evidence in this case indicates that, during the early morning hours of June 18, 2012, the victim, an 18–year–old African–American woman, QR, left her friend's house, located in the area of Woodward Avenue and Six Mile, alone and upset, and started walking toward Woodward. She was wearing a short pink dress and carrying a purse. Around 6:30 a.m., during a police officer's routine patrol in the area, an individual known to the officer approached and said that earlier that night he saw a tall man following a brown or dark skinned woman walking along Woodward who looked upset. The individual described the woman as "kinda short" and wearing pink and white. The individual, who was emotional and upset, told the officer that the situation did not "seem right," so he stayed. He then observed the man "force" the woman into an abandoned apartment building with a vacant lot next to it located on Woodward at Nevada. At the individual's insistence, the officer investigated inside the abandoned building and did not find anything, but did not check the grassy area outside of the building. The next day the victim's body was discovered in the vacant lot adjacent to the abandoned building, which was very overgrown with vegetation. The victim, QR, was found partially clothed and wearing a pink and white "tube dress" that was pulled up above her waist and her panties were pulled up over to the side. She had "some sort of puncture or trauma" to the left side of her neck and there was a large pool of clotted blood underneath her head, indicating that she bled out and died in the vacant lot. The medical examiner determined that the victim died of a stab wound to her neck, which proceeded into her jugular vein and left carotid artery, and that the manner of death was homicide. Semen was found on samples taken from the victim's vagina and the panties retrieved from her body. DNA analysis by a forensic scientist revealed that defendant's DNA profile matched the semen to a very high degree of probability.

---

petition for writ of habeas corpus that is currently pending before U.S. District Court Judge Terrence G. Berg. *Gilkey v. Burton,* No. 2:17-cv-12753 (E.D. Mich).

*People v. Gilkey*, No. 326172, 2016 WL 1579041, at * 1 (Mich. Ct. App. Apr. 19, 2016).

Petitioner's conviction was affirmed. *Id., lv. den.* 500 Mich. 857, 883 N.W.2d 769 (2016).

Petitioner seeks habeas relief on the following grounds:

I. There was insufficient evidence that petitioner committed homicide or sexual assault to sustain his convictions.

II. The trial court abused its discretion and violated petitioner's Sixth Amendment right to counsel by refusing to appoint substitute counsel.

III. Petitioner is entitled to habeas relief where the admission of other acts evidence was so unfairly prejudicial as to deprive petitioner due process of law contrary to the Fourteenth Amendment.

IV. Petitioner was denied his state and federal constitutional right to a jury trial where the record fails to show that he voluntarily and knowingly waived his jury trial right after being fully advised of that right by the court.

## II.  Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)      resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.  Discussion

**A. Claim # 1.  The sufficiency of evidence claim.**

Petitioner claims that there was insufficient evidence to convict him of the charges. Petitioner argues that there was insufficient evidence that the victim was sexually assaulted or that he was the person who actually murdered the

victim. Petitioner suggests that the evidence at most established that he had sex with the victim after she had already been killed by someone else.

The Michigan Court of Appeals rejected petitioner's claim:

Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could reasonably infer that the sexual intercourse was not consensual, but that defendant took the victim against her will into a concealed area, forced her to engage in sexual intercourse at knife point, stabbed her in the neck, and left her to bleed out and die. We disagree with defendant's assertions that DNA evidence linking him to the victim was merely evidence that he and the victim had sexual contact and that there was no evidence that such contact was nonconsensual or even occurred before her death. There is no dispute that strong DNA evidence linked defendant to the semen found inside the victim's vagina and on the panties retrieved from her body, which sufficiently established that defendant engaged in sexual intercourse with the victim. Contrary to defendant's argument, there is also strong circumstantial evidence from which a rational trier of fact could reasonably infer that the sexual intercourse was not consensual and defendant was armed with a knife when he committed the assault, including the testimony indicating that the victim was "forced" into the abandoned building, the manner in which the victim was found, and that the victim died from a fatal stab wound to her neck. See *People v. Ramsey*, 89 Mich.App 260, 266; 280 NW2d 840 (1979)(finding evidence of rape from evidence of sexual intercourse and the victim's location, position, removed clothing). We find this evidence sufficient to support defendant's conviction of CSC I, MCL 750.520b(1)(e).

We likewise conclude that sufficient evidence supports defendant's murder convictions. "The elements of first-degree murder are (1) the intentional killing of a human (2) with premeditation and deliberation." *People v. Bennett*, 290 Mich.App 465, 472; 802 NW2d 627 (2010). "The elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, to do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result, (3) while committing, attempting to commit, or assisting in the commission of any of the felonies specifically enumerated in MCL 750.316," including first-degree criminal sexual conduct. *People v. Turner*, 213 Mich.App

558, 566; 540 NW2d 728 (1995), *overruled in part on other grounds* *People v. Mass*, 464 Mich. 615; 628 NW2d 540 (2001). "[I]dentity is an element of every offense," *People v. Yost*, 278 Mich.App 341, 356; 749 NW2d 753 (2008), and thus, the prosecution must prove beyond a reasonable doubt defendant's identity as the perpetrator of the charged offenses, *People v. Kern*, 6 Mich.App 406, 409; 149 NW2d 216 (1967).

Defendant claims that the evidence was insufficient to establish his identity as the perpetrator of QR's killing. Although there were no eyewitnesses to the murder and the knife used in the killing was apparently not recovered, the circumstantial evidence surrounding the homicide sufficiently established defendant's identity as the perpetrator of the murder. *Kern,* 6 Mich.App at 409–410 ("Identity may be shown by either direct testimony or circumstantial evidence...."). Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could reasonably infer that the victim was targeted, forced into a concealed area, raped at knife point, stabbed in the neck, and left to die. From these inferences, coupled with the strong DNA evidence linking defendant to the semen found inside the victim's vagina and on the panties retrieved from her body, it could be reasonably inferred that defendant was the individual who perpetrated the sexual assault and murder of the victim beyond a reasonable doubt. *Nowack*, 462 Mich. at 399–400. Additionally, evidence related to a similar homicide of another young woman in the same area, properly admitted pursuant to MRE 404(b)(1) as discussed in the next section, shows defendant's common scheme or plan in abducting young women walking alone on or near Woodward, taking them to a concealed location, and sexually assaulting and killing them by stabbing them in the neck with a knife, and further connects defendant to the murder and sexual assault of QR. We conclude that sufficient evidence established that defendant perpetrated the sexual assault and murder of the victim in this case.

*People v. Gilkey*, No. 326172, 2016 WL 1579041, at * 2–3.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397

U.S. 358, 364 (1970).  But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).  A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt."  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal citation and footnote omitted)(emphasis in the original).  The *Jackson* standard applies to bench trials, as well as to jury trials. *See e.g. U.S. v. Bronzino,* 598 F. 3d 276, 278 (6th Cir. 2010).

A federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim merely because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proved beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x. 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).

Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted). Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Eyewitness identification is not necessary to sustain a conviction. *See United States v. Brown,* 408 F. 3d 1049, 1051 (8th Cir. 2005); *Dell v. Straub,* 194 F. Supp. 2d at 648. In the present case, the DNA evidence was sufficient in and of itself to establish petitioner's identity as the perpetrator. *See e.g. U.S. v. Seawood,* 172 F. 3d 986, 988 (7th Cir. 1999); *Kelley v. Jackson,* 353 F. Supp. 2d 887, 892 (E.D. Mich. 2005). Indeed, a rational trier of fact "could consider the DNA evidence to be powerful evidence of guilt." *McDaniel v. Brown*, 558 U.S. 120, 132 (2010)

Petitioner acknowledges that his DNA was recovered from the victim but suggests that she had already been killed by someone else and that he had sex with the victim after she died.

Under Michigan law, first-degree criminal sexual conduct is committed when there is an intrusion into the genital or anal opening of another person under one of the enumerated circumstances in the first-degree criminal sexual conduct statute. *See Farley v. Lafler,* 193 F. App'x. 543, 548 (6th Cir. 2006). Petitioner was convicted of first-degree criminal sexual conduct under a theory that he was armed with a weapon during the sexual assault.

Under Michigan law, "the crime of criminal sexual conduct requires a live victim at the time of penetration." *People v. Hutner*, 209 Mich. App. 280, 283, 530 N.W. 2d 174, 176 (1995).

The evidence in this case was sufficient for a rational trier of fact to conclude that the victim was still alive at the time of the assault and that petitioner was the person who sexually assaulted her. The evidence established that the victim was forced into a concealed area, where sexual penetration took place. The victim was stabbed in the neck and left to die. When the victim was discovered, her dress had been pulled up above her waist and her panties had been pulled up over to the side. Petitioner's DNA matched the semen that was recovered from the victim's vagina and panties. All of this evidence suggests that it was petitioner who forced the victim against her will at knifepoint into the abandoned building, sexually assaulted her while she was still alive, before murdering her, so as to sustain his convictions for first-degree criminal sexual conduct and the related first-degree felony murder charge. "If the woman was

9

already dead, it would have been unnecessary for defendant to use much force to commit the sexual offense." *People v. Diefenbach*, No. 176489, 1996 WL 33360429, at * 2 (Mich. Ct. App. Aug. 20, 1996). Petitioner's sufficiency of evidence claim fails because he "points to no evidence introduced at trial that conclusively proved [the victim] was dead at the time he unlawfully penetrated her." *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010).

There was likewise sufficient evidence to establish that petitioner was the person who murdered the victim during the commission of the sexual assault.

Under Michigan law, the elements of first-degree felony murder are:

(1) the killing of a human being;
(2) with an intent to kill, to do great bodily harm, or to create a high risk of death or great bodily harm with knowledge that death or great bodily harm is the probable result (i.e., malice);
(3) while committing, attempting to commit, or assisting in the commission of one of the felonies enumerated in the felony murder statute.

*Matthews v. Abramajtys,* 319 F. 3d 780, 789 (6th Cir. 2003)(citing to *People v. Carines*, 460 Mich. 750, 759; 597 N.W. 2d 130 (1999)).

In order to obtain a conviction for first-degree premeditated murder in Michigan, the prosecutor must prove that a defendant's intentional killing of another was deliberated and premeditated. *See Scott v. Elo*, 302 F. 3d 598, 602 (6th Cir. 2002)(citing *People v. Schollaert*, 194 Mich. App. 158; 486 N.W.2d 312, 318 (1992)). The elements of premeditation and deliberation may be inferred from the circumstances surrounding the killing. *See Johnson v. Hofbauer*, 159 F.

10

Supp. 2d 582, 596 (E.D. Mich. 2001)(*citing People v. Anderson*, 209 Mich. App. 527, 537; 531 N. W. 2d 780 (1995)). Premeditation may be proven through evidence of the following factors:

1. the prior relationship of the parties;
2. the defendant's actions before the killing;
3. the circumstances of the killing itself;
4. the defendant's conduct after the homicide.

*Cyars v. Hofbauer*, 383 F.3d 485, 491 (6th Cir. 2004); *Anderson*, 209 Mich. App. at 527.

In the present case, there was sufficient circumstantial evidence to support petitioner's murder convictions. Petitioner's DNA matched the DNA of the semen taken from the victim's vagina and panties. The victim had been stabbed in the neck. The evidence supports a finding that the victim was killed during or after the sexual assault. It was reasonable for the judge to find that petitioner was the murderer. The other acts evidence admitted under 404(b) evidence established that petitioner murdered another woman in a like manner and in the same area is further evidence which establishes petitioner's identity as the murderer. *See Jamison v. Collins*, 100 F. Supp. 2d 647, 707 (S.D. Ohio 2000), *aff'd*, 291 F.3d 380 (6th Cir. 2002), *as amended on denial of reh'g* (July 11, 2002). Petitioner is not entitled to relief on his first claim.

**B. Claim # 2.  The substitution of counsel claim.**

Petitioner next argues that the trial court improperly denied his request to substitute defense counsel on the first day of trial because counsel failed to request independent DNA testing and to sufficiently communicate with petitioner.

On the first day of trial, petitioner requested a new attorney.  Petitioner claimed that there were "several occasions where the attorney had to just come see me in the jail and I didn't get any kind of counsel about the case." (Tr. 1/21/15, p. 5).  Petitioner also complained that counsel failed to file certain motions.  When asked to elaborate, petitioner indicated that he wanted to have a motion to have his DNA tested.  In response to a further question from the judge, petitioner clarified that he wanted a new attorney to pursue independent testing of his DNA.  Petitioner further alleged that he did not get proper counseling or advice because his attorney only came to visit him in jail about once a month. Petitioner also handed the judge a letter containing the same allegations. (*Id.*, pp. 5-7).  The judge reviewed the letter and confirmed with petitioner that it contained the same allegations against counsel that petitioner had stated in court, namely, that counsel failed to obtain independent DNA testing and failed to visit him enough in jail. (*Id.*, p. 8).

Defense counsel responded that he had obtained an order from the court for an independent analysis of the DNA.   Counsel informed the judge that the

only thing that had been approved by the judge was a review of the testing

laboratory's protocol, but the review indicated that there were no errors in the

DNA analysis and the analysis was satisfactory. Counsel noted that the judge

had indicated that if there were errors with the testing of the DNA, counsel could

return to him and ask for the DNA to be re-tested, but because the laboratory

review did not indicate any errors in the DNA, counsel did not pursue the issue

further. (*Id.*, pp. 8-9). Counsel indicated that he visited petitioner in jail twice and

spoke with him in the court holding cell on hearing dates. Counsel concluded:

"So I feel I communicated with him plenty of times, there was nothing fancy

about this matter in terms of what he was looking for. No witnesses he needed

me to search out. No investigator to do any type of research. His position is

quite simple; that this is something that was placed on him by the police. And I

can try this matter and I've been ready to try this matter, but we had to wait for

the analysis to come back from Speckin Labs and we just got that last week."

(*Id.*, pp. 9-10).

The judge noted that when petitioner appeared before the court the

previous day and waived trial by jury, he did not complain about counsel. The

judge concluded that the reasons stated by petitioner were insufficient to

substitute counsel and denied petitioner's request. (*Id.*, pp. 11-14).

The Sixth Amendment right to the assistance of counsel does not

guarantee a criminal defendant that he or she will be represented by a particular

attorney. *Serra v. Michigan Department of Corrections*, 4 F.3d 1348, 1351 (6th Cir. 1993)(citing *Caplin & Drysdale v. United States,* 491 U.S. 617, 624 (1989)). A criminal defendant who has the desire and the financial means to retain his own counsel "should be afforded a fair opportunity to secure counsel of his own choice." *Id.* (quoting *Powell v. Alabama*, 287 U.S. 45, 53 (1932)). Indeed, "[t]he Sixth Amendment guarantees the defendant the right to be represented by an otherwise qualified attorney whom that defendant can afford to hire, or who is willing to represent the defendant even though he is without funds." *U.S. v. Gonzalez-Lopez,* 548 U.S. 140, 144 (2006)(quoting *Caplin & Drysdale,* 491 U.S. at 624-25). However, while a criminal defendant who can afford his or her own attorney has a right to a chosen attorney, that right is a qualified right. *Serra,* 4 F.3d at 1348 (citing to *Wheat v. United States,* 486 U.S. 153, 159 (1988)). Stated differently, the right to counsel of one's own choice is not absolute. *See Wilson v. Mintzes,* 761 F.2d 275, 280 (6th Cir. 1985). "Although a criminal defendant is entitled to a reasonable opportunity to obtain counsel of his choice, the exercise of this right must be balanced against the court's authority to control its docket." *Lockett v. Arn,* 740 F.2d 407, 413 (6th Cir. 1984); *see also Gonzalez-Lopez,* 548 U.S. at 151-52)("Nothing we have said today casts any doubt or places any qualification upon our previous holdings that limit the right to counsel of choice and recognize the authority of trial courts to establish criteria for admitting lawyers to argue before them...We have recognized a trial court's wide

14

latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar.")(internal citations omitted).  Finally, the right to counsel of choice may not be used to unreasonably delay a trial. *See Linton v. Perini,* 656 F.2d 207, 209 (6th Cir. 1981).

"Because a trial court's decision on substitution is so fact-specific, it deserves deference; a reviewing court may overturn it only for an abuse of discretion." *Martel v. Clair*, 565 U.S. 648, 663-64 (2012).

Petitioner is not entitled to relief for several reasons.

This Court first notes that the petitioner's request for a continuance to obtain new counsel was untimely because it was made on the first day of trial. Petitioner offered no reasons to the state courts or to this Court why he did not bring his dissatisfaction with his counsel up to the trial court earlier.  The Sixth Circuit has noted that when "the granting of the defendant's request [for a continuance to obtain new counsel] would almost certainly necessitate a last-minute continuance, the trial judge's actions are entitled to extraordinary deference." *U.S. v. Whitfield*, 259 F. App'x. 830, 834 (6th Cir. 2008)(quoting *United States v. Pierce*, 60 F.3d 886, 891 (1st Cir.1995)).  The Sixth Circuit has rejected similar requests as being untimely. *See U.S. v. Trujillo,* 376 F.3d 593, 606-07 (6th Cir. 2004)(motion for substitution of counsel was untimely, coming only three days prior to the start of the trial); *United States v. Jennings,* 83 F.3d 145, 148 (6th Cir. 1996)(motion to continue to obtain new counsel untimely when

it was made the day before trial).  In the present case, petitioner's request for a continuance to obtain new counsel on the day of trial was untimely, particularly where the petitioner had several opportunities prior to trial to bring his dissatisfaction with counsel to the attention of the trial court. *Whitfield,* 259 F. App'x. at 834.

Secondly, petitioner failed to establish good cause for substitution of counsel, where he failed to show that the conflict between himself and his attorney was so great that it resulted in a total lack of communication which prevented an adequate defense. *See United States v. Jennings*, 83 F. 3d at 149. Petitioner was not entitled to substitute counsel because his complaints against counsel involved differences of opinion regarding trial strategy and what motions to file rather than any irreconcilable conflict or total lack of communication. *See e.g. Adams v. Smith*, 280 F. Supp. 2d 704, 720 (E.D. Mich. 2003).  The record in this case does not demonstrate that the disagreements between petitioner and his attorney rose to the level of a conflict sufficient to justify the substitution of counsel. *See United States v. Sullivan*, 431 F.3d 976, 981 (6th Cir. 2005).

Third, the judge sufficiently inquired into petitioner's allegations of ineffectiveness against counsel on the first day of trial.  In light of the fact that there were "multiple lengthy discussions" about the alleged conflicts between petitioner and his counsel, there was no abuse of discretion in denying

petitioner's motion for substitute counsel. *See U.S. v. Vasquez*, 560 F.3d 461, 467 (6th Cir. 2009).

Finally, petitioner is unable to show that he was prejudiced by the failure of the trial court to grant petitioner a continuance to hire a new attorney, in light of the fact that he received effective assistance of counsel at trial. *Vasquez,* 560 F.3d at 468. "The strained relationship" between petitioner and his attorney was not a "complete breakdown in communication" that prevented the petitioner from receiving an adequate defense. *Id.*

The Michigan Court of Appeals' conclusion that the trial judge's denial of the petitioner's motion to substitute counsel did not violate his Sixth Amendment rights was not an unreasonable application of federal law, and thus the petitioner is not entitled to federal habeas relief. *See Henness v. Bagley*, 644 F.3d 308, 322 (6th Cir. 2011).

### C.  Claim # 3.  The prior bad acts evidence claim.

Petitioner next claims that the judge violated his constitutional rights by admitting evidence of his other murder in violation of M.R.E. 404(b).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).  A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.*  Thus, errors in the application of state law, especially rulings

regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000).

Petitioner's claim that the state court violated M.R.E. 404(b) by admitting this evidence is non-cognizable on habeas review. *Bey v. Bagley,* 500 F. 3d 514, 519 (6th Cir. 2007); *Estelle,* 502 U.S. at 72 (Supreme Court's habeas powers did not permit Court to reverse state court conviction based on their belief that the state trial judge erred in ruling that prior injury evidence was admissible as bad acts evidence under California law); *Dowling v. U.S.,* 493 U.S. 342, 352-53 (1990)(admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). The admission of this "prior bad acts" or "other acts" evidence against petitioner at his state trial does not entitle him to habeas relief, because there is no clearly established Supreme Court law which holds that a state violates a habeas petitioner's due process rights by admitting propensity evidence in the form of "prior bad acts" evidence. *See Bugh v. Mitchell,* 329 F. 3d 496, 512 (6th Cir. 2003); *Adams v. Smith,* 280 F. Supp. 2d at 716. Petitioner is not entitled to relief on his third claim.

### D. Claim # 4. The improper jury waiver claim.

Petitioner next claims that he did not knowingly and intelligently waive his right to a jury trial because he was not advised by the judge that a jury would contain 12 members and that their verdict had to be unanimous.

18

On January 20, 2015, petitioner appeared for trial.

The trial judge engaged in the following colloquy:

THE COURT: Good morning. Today is the date and time set for trial. I have been provided with a form with the caption a Waiver of Trial by Jury and Election to Be Tried Without a Jury. I understand that after speaking to counsel the defendant, Mr. Gilkey, would like to proceed not with jury trial but instead with a waiver trial, meaning a trial before the bench; is that correct?

THE DEFENDANT: That's correct.

MR. GAGNIUK (Defense Counsel): It is, sir.

THE COURT: All right. Would you like to discuss this issue on the record with your client to confirm that he is aware?

MR. GAGNIUK: Of course, Your Honor. I didn't mean to interrupt. You understand that you could have a jury trial and we would select that jury today, we could proceed with the trial tomorrow; or you can have, of course, the judge decide, he would be the ultimate decider of the facts in this case as opposed to the jury?

THE DEFENDANT: Exactly.

MR. GAGNIUK: And you've had a jury trial before?

THE DEFENDANT: Yep.

MR. GAGNIUK: So you understand that their duty is to determine the facts of the matter?

THE DEFENDANT: Exactly.

MR. GAGNIUK: And you understand that instead of a jury, it would be just the judge?

THE DEFENDANT: Exactly.

THE COURT: Okay. And this is something you've consulted with your attorney about before and you have evaluated the pros and cons and you've decided you'd like to proceed in front of me instead of a jury?

THE DEFENDANT: Exactly.

THE COURT: Okay. All right. I do find that this Waiver of Trial by Jury has been freely and voluntarily made. No one's made any promises or threats to get you to do this, sir?

THE DEFENDANT: No, sir.

THE COURT: No one made – coerced you in any way?

THE DEFENDANT: No, sir.

THE COURT: And on one's made any promises about what would happen in front of a judge; that it would be better in front of a judge instead of in front of a jury? No one made that promise?

THE DEFENDANT: No, sir.

THE COURT: So this is a freely and voluntarily made waiver; is that correct?

THE DEFENDANT: Yes, sir.

THE COURT: All right. I do find that based on what you've stated on the record, as well as your completion of the form which has been provided to me, Waiver of Trial by Jury has been freely and voluntarily given and I will accept your waiver. For the record, I am now signing the Waiver of Trial By Jury form.

MR. PRASAD (The Prosecutor): And, Your Honor, for the record the People do not object.

THE COURT: thank you. And I am dating it today, January 20, 2015.

MR. GAGNIUK: Thank you, sir.

(Tr. 1/20/15, pp. 3-6).

The Michigan Court of Appeals rejected petitioner's claim:

Questioning by defense counsel and the court at the waiver hearing revealed that defendant consulted with his attorney about the waiver issue and understood that he was waiving his right to a jury trial and that his case would be decided by the judge alone. Defendant also acknowledged during questioning that he had prior experience with a jury trial, from which it is logical to infer that he understood the nature of a jury trial. Additionally, defendant's written waiver, which explicitly states, "I fully understand that under the laws of this state I have a constitutional right to a trial by jury" and "voluntarily waive and relinquish my [right] to a trial by jury and elect to be tried by a judge of the court," further evidences defendant's understanding that he was relinquishing his constitutional right to a jury trial. The court further questioned defendant to ascertain whether he was coerced, threatened, or made any promises that it would be better for a judge to decide his case and defendant acknowledged that the waiver was freely and voluntarily made. We conclude that the questioning of defendant by the court and defense counsel, as well as defendant's written waiver, sufficiently demonstrates that defendant understood his right to a jury trial and voluntarily chose to waive that right to be tried by the court, and thus, his wavier was constitutionally valid. Defendant failed to demonstrate any plain error that affected his substantial rights from the court's failure to fully comply with the procedural requirements of MCR 6.402(B).

Defendant also asserts that his waiver is invalid because the trial court did not explain to him that a jury of 12 members must reach a unanimous verdict in order to convict him. However, a trial court "is not required to explain the unanimity required in a jury trial as compared to a bench trial." Defendant further asserts that the waiver procedure was improper because he was not informed that he could participate in the selection of jurors and he was not placed under oath when executing the waiver of his jury trial right. However, there are no such requirements.

*People v. Gilkey*, No. 326172, 2016 WL 1579041, at * 7–8 (internal citations omitted).

The burden of demonstrating that a waiver of a jury trial was invalid lies with the defendant who waived it. *See Sowell v. Bradshaw,* 372 F. 3d 821, 832 (6th Cir. 2004).  "[A]lthough recommended, there is no federal constitutional requirement that a court conduct an on-the-record colloquy with the defendant prior to accepting the jury waiver." *Spytma v. Howes,* 313 F. 3d 363, 370 (6th Cir. 2002); *See also Fitzgerald v. Withrow,* 292 F. 3d 500, 504 (6th Cir. 2002)(neither an oral colloquy, nor any other particular form of waiver, is required for a valid waiver of jury trial as a matter of federal constitutional law). Moreover, "[t]echnical knowledge of the jury trial right is not required for waiver to be effective." *Spytma*, 313 F.3d at 370 (internal quotation omitted).  Most importantly, "there is a knowing and intelligent waiver where the defendant 'understood that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge.'" *Sowell*, 372 F. 3d at 836 (*quoting United States v. Sammons*, 918 F. 2d 592, 597 (6th Cir. 1990)(internal quotation omitted)).  Although a criminal defendant may be deemed sufficiently informed to make an intelligent waiver of the right to jury trial if he or she is informed that a jury is composed of 12 members of community, that the defendant participates in their selection, that a jury verdict must be unanimous, and that judge alone will decide guilt or innocence in a bench trial, such elements are not constitutionally required. *Id.* at 832.

In the present case, the trial court advised petitioner that he had a right to have a jury decide his case. The trial court further ascertained that petitioner wished to relinquish this right and be tried by the court sitting without a jury. The trial court asked petitioner whether any threats or promises had been made to induce him to waive his right to a jury trial. Under the circumstances, the trial court's brief colloquy was constitutionally sufficient. In addition, petitioner does not deny that he signed a written waiver of jury form. Courts must give "presumptive force" to written waivers of a jury trial. *Spytma*, 313 F.3d at 371. Finally, the record in petitioner's case "does not disclose any evidence that petitioner was so unaware of the rudimentary elements of trial by jury that his waiver cannot stand." *Id.* Petitioner is not entitled to habeas relief on his claim.

### E. A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. [3] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects

---

[3] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court concludes that jurists of reason would find its assessment of the constitutional claims debatable or wrong. *See Slack*, 529 U.S. at 484-85. Any doubt regarding whether to grant a COA is resolved in favor of the habeas petitioner, and the severity of the penalty may be considered in making that determination. *See Newton v. Dretke,* 371 F. 3d 250, 253 (5th Cir. 2004). Any doubts regarding the issuance of a COA in this case should be resolved in petitioner's favor, in light of the nonparolable life sentence that he is serving. The Court issues petitioner a COA. Petitioner is also granted leave to proceed on appeal *in forma pauperis*, as any appeal would be in good faith. *See* 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a); *Foster v. Ludwick*, 208 F. Supp. 2d 750, 765 (E.D. Mich. 2002).

**IV. CONCLUSION**

For the reasons stated above, this Court concludes that Petitioner Gilkey

is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the petition for writ of habeas corpus is

**DENIED WITH PREJUDICE**. (Dkt. # 1.).  The Court issues petitioner a certificate

of appealability and leave to proceed on appeal *in forma pauperis*.

S/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge

Dated:   June 1, 2018